IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ANDRE R. THOMAS,                          :
                                          :
                Petitioner,               :
                                          :
        v.                                :      Civ. Act. No. 04-159-JJF
                                          :
THOMAS L. CARROLL,   Warden,              :
                                          :
                Respondent.               :

—————————————————————

Andre R. Thomas.  <u>Pro</u> <u>se</u> Petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for Respondent.

—————————————————————

<u>**MEMORANDUM OPINION**</u>

March 31, 2006
Wilmington, Delaware

Farnan, Judge

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (the "Petition") filed by Petitioner, Andre R. Thomas (D.I. 1; 6). For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

I.   **BACKGROUND**

While incarcerated at the Delaware Correctional Center on July 25, 2002, Petitioner struck a corrections officer three times. As a result, Petitioner was charged with assault in a detention center. Petitioner was assigned a Public Defender, and a preliminary hearing was scheduled for August 28, 2002. At the request of Petitioner's counsel, the preliminary hearing was re-scheduled to September 12, 2002. In the interim, the grand jury indicted Petitioner, and the re-scheduled preliminary hearing was cancelled.

On October 1, 2002, Petitioner's counsel filed a motion to withdraw on the grounds that Petitioner wished to proceed pro se. On October 28, 2002, Petitioner entered a plea of not guilty, and the Delaware Superior Court granted counsel's motion to withdraw. The Superior Court also denied Petitioner's pro se motions for a preliminary hearing and for the appointment of standby counsel.

The Delaware Superior Court subsequently appointed conflict counsel for Petitioner, but then granted another request by

1

Petitioner for leave to proceed pro se.  In January 2003,
Petitioner wrote a letter to the Delaware Superior Court asking
for advice on how to subpoena witnesses and again requesting
stand-by counsel.  At the start of the April 8, 2003 trial, but
prior to the selection of the jury, the Superior Court asked
Petitioner if he recalled his letter request for standby counsel.
Petitioner replied that he did not recall that request.  The
Superior Court then asked Petitioner if he was ready to proceed
pro se, and Petitioner responded affirmatively.  Petitioner then
asked the Superior Court to subpoena thirteen inmates and several
corrections officers to testify as defense witnesses.  Petitioner
also requested a copy of his complete prison medical record.

        After conducting an extensive colloquy with Petitioner, the
Superior Court offered to have three inmates and a corrections
officer brought from the prison to testify and to provide
Petitioner with his prison medical record.  The prosecutor also
gave Petitioner a copy of written discovery that had previously
been sent to Petitioner's attorney, but which Petitioner claimed
he had never seen.

        Despite these efforts, Petitioner refused to participate in
the proceedings, unless all thirteen witnesses he wanted were
brought to the trial to testify.  After another extensive
colloquy with Petitioner, the Superior Court decided to continue
with the trial in Petitioner's absence, but ordered Petitioner to

                                                                    2

remain in the courthouse during the trial. After the jury was selected, the Superior Court asked Petitioner to return to the courtroom to determine how he wished to proceed. Petitioner refused to enter the courtroom. Before the start of trial, the Superior Court again asked Petitioner to return to the courtroom. Petitioner returned to the courtroom, but stated that he still did not wish to participate in his trial.

The trial was conducted in Petitioner's absence, and Petitioner was convicted of the charge. Pursuant to 11 Del. C. Ann. § 4214(a), Petitioner was sentenced as an habitual offender to eight years imprisonment and the forfeiture of good time credits. Petitioner was present at the sentencing hearing.

Petitioner filed a pro se appeal, and the Delaware Supreme Court affirmed his conviction and sentence. Thomas v. State, 842 A.2d 1244 (Table), 2004 WL 300444 (Del. Feb. 9, 2004). Petitioner did not file any post-conviction motions in the state courts.

Petitioner timely filed the instant Petition seeking relief under 28 U.S.C. § 2254 on the grounds that: (1) his Sixth Amendment right to counsel was violated by the Superior Court's failure to appoint stand-by counsel after deciding to proceed with his trial in absentia; (2) his due process rights were violated because he was not present during jury selection, the trial, and the return of the jury's verdict; (3) his due process

3

rights were violated by the Superior Court's refusal to subpoena the witnesses he requested and the Superior Court's decision denying Petitioner access to the victim's work record; and (4) his due process rights were violated when the prosecution proceeded by way of indictment after a preliminary hearing had started. Respondents have filed a Response to the Petition (D.I. 9) requesting the Court to dismiss the Petition on the grounds that Petitioner's claims are either not cognizable or do not warrant relief under 28 U.S.C. § 2254(d)(1).

## II.  GOVERNING LEGAL PRINCIPLES

### A.    Exhaustion

Absent exceptional circumstances, a federal court cannot grant federal habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); 28 U.S.C. § 2254(c). To satisfy the exhaustion requirement, the petitioner must demonstrate that he "fairly presented" his claim to the state's highest court, either on

4

direct appeal or in a post-conviction proceeding.  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); Coverdale v. Snyder, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).  A claim is "fairly presented" if the petitioner has presented the claim's factual and legal basis to the state courts in a manner that puts them on notice that a federal claim is being asserted.  Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004)(citing McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999)).

   B.   Standard Of Review Under The Antiterrorism And
        Effective Death Penalty Act of 1996 ("AEDPA")

   If a state court adjudicates a federal habeas claim on the merits, federal habeas relief cannot be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 412 (2000);  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).  For the purposes of 28 U.S.C. § 2254(d), a state court adjudicates a claim on the merits if its "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal

5

citations omitted), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Rompilla v. Beard</u>, 125 S. Ct. 2456 (2005).

A state court decision is contrary to clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000), or if it "decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." <u>Bell v. Cone</u>, 535 U.S. 685, 687 (2002). A state court decision is an unreasonable application of clearly established federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Williams</u>, 529 U.S. at 407-08.

When analyzing claims under the AEDPA, the state court's factual determinations are presumed to be correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, <u>Campbell v. Vaughn</u>, 209 F.3d 280, 286 (3d Cir. 2000), and is only rebuttable if the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341 (2003).

## III. DISCUSSION

A. Whether Petitioner's Sixth Amendment Right To Counsel Was Violated By The Superior Court's Failure To Appoint Stand-By Counsel After Deciding To Proceed With His Trial In His Absence

Petitioner contends that the Superior Court violated his Sixth Amendment right to counsel by failing to appoint stand-by counsel for Petitioner after deciding to proceed with his trial in absentia. The Delaware Supreme Court denied Petitioner's claim on the merits,[1] and therefore, the Court may only grant habeas relief if it determines that the Delaware Supreme Court's decision was contrary to, or an unreasonable application of clearly settled federal law as established by the Supreme Court.[2] See Rompilla, 355 F.3d at 247; 28 U.S.C. § 2254(d)(1).

---

[1] Petitioner presented this claim to the Delaware Supreme Court as both a violation of state law under the Delaware Superior Court Criminal Rules, and as a violation of his federal constitutional right to counsel. The Delaware Supreme denied the claim on the basis of Delaware rules and Delaware case law. See Thomas, 2004 WL 300444, at **2. However, the Delaware Supreme Court cited Delaware cases that applied United States Supreme Court precedent concerning the right to counsel. See Bass v. State, 2000 WL 1508724 (Del. 2000) and Briscoe v. State, 606 A.2d 103, 109 (Del. 1992). Accordingly, the Court concludes that the Delaware Supreme Court adjudicated the merits of Petitioner's federal constitutional claim for the purposes of federal habeas review under the AEDPA. See Dye v. Hofbauer, 126 S.Ct. 5,7 (2005) (finding that petitioner presented a federal claim to the state courts because his state appellate brief cited the Fifth and Fourteenth Amendments, and also cited cases concerning alleged violations of federal due process rights).

[2] To the extent Petitioner raises this claim as violation of state law, the Court will dismiss it for failing to present an issue cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62 (1991).

7

1.  The Applicable Legal Principles

Although an accused has the right to counsel, he also has the right to represent himself, if the choice is made knowingly, intelligently and voluntarily. Faretta v. California, 422 U.S. 806, 834-35 (1975); Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938). However, an accused does not have the right to "hybrid representation." McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) ("A defendant does not have a constitutional right to choreograph special appearances by counsel."). In other words, a defendant who has voluntarily and knowingly waived his right to counsel and is representing himself does not have a Sixth Amendment right have an attorney serve as co-counsel. See, e.g., U.S. v. Schwyhart, 123 Fed. Appx. 62, 68 (3d Cir. 2005) (non-precedential). As a practical matter, courts may appoint stand-by counsel, even over the objection of the accused, to assist the accused and to assume the representation if the court is required to terminate defendant's right to self-representation or defendant chooses to reassert his right to counsel. Faretta, 422 U.S. at 834 n. 46; U.S. v. Bova, 350 F.3d 224, 227 (1st Cir. 2003) ("[C]ourts often appoint standby counsel for a defendant who insists on self-representation - - partly in the hope that proceedings will flow more smoothly - - [but there] is no case suggesting that the defendant has a constitutional right to represent himself and enjoy appointed counsel."); see also

8

McQueen v. Blackburn, 755 F.2d 1174 (5th Cir. 1985).

A defendant may reassert his right to counsel and terminate his self-representation by explicitly and voluntarily requesting the appointment of counsel. See, e.g., Robinson v. Ignacio, 360 F.3d 1044, 1058-59 (9th Cir. 2004) (collecting cases and discussing a pro se defendant's right to re-assert his right to counsel after voluntarily waiving it at an earlier time). However, a defendant may also forfeit his right to self-representation, if he deliberately engages in serious and obstructionist misconduct, vacillates over his representation or manipulates the proceedings. Faretta, 422 U.S. at 834 n. 46; McKaskle, 465 U.S. at 182-84; Buhl, 233 F.3d at 800-01. If a defendant has explicitly terminated or forfeited his right to self-representation, a court may appoint counsel to represent him without violating the defendant's constitutional right to self-representation. See McKaskle, 465 U.S. at 182-84; Buhl, 233 F.3d at 800.

### 2. Analysis

Petitioner does not challenge the waiver of his right to counsel, does not contend that his refusal to participate in the trial constituted a forfeiture or waiver of his right to self-representation, and does not contend that he explicitly requested stand-by counsel after refusing to participate in his trial. Rather, Petitioner appears to contend that he was entitled to

continue with his self-representation, but that the Superior Court was constitutionally required to appoint stand-by counsel once it decided to proceed with his trial _in absentia_. Stated another way, Petitioner argues that he had a constitutional right to hybrid representation because he was not present at trial.[3]

Because the Delaware state courts did not expressly discuss Supreme Court precedent in their decision denying Petitioner's claim that his right to counsel was violated, the Court must determine whether the state court contradicted or took a position in its decision that was explicitly inconsistent with prevailing Supreme Court decisions. _Fischetti_, 384 F.3d at 150. Although the Supreme Court has not yet considered the question of stand-by counsel in the context of a trial held _in absentia_, the Supreme Court has concluded in _Faretta_ and its progeny, that a _pro se_ defendant's Sixth Amendment right to counsel is not violated by a trial court's failure to appoint stand-by counsel. Accordingly, the Court concludes that the Delaware Supreme Court's decision denying Petitioner's claim was not contrary to clearly established Supreme Court precedent.

Where, as here, there is no clearly established Supreme Court precedent, the Court must also consider whether the state

_____

[3]     The Court uses the terms "stand-by counsel" and "hybrid representation" interchangeably throughout the Memorandum Opinion. Both terms, as used by the Court within the context of Petitioner's case, mean representation by an attorney in addition to Petitioner's self-representation.

court's decision was based on an "unreasonable application" of
Supreme Court precedent.  In considering the "unreasonable
application" prong of Section 2254(d)(1), the Third Circuit has
explained:

> In reviewing the reasonableness of the state court's
> application of Supreme Court precedent [under § 2254(d)(1)],
> we must use as our point of departure the specific holdings
> of the Court's decisions.  When assessing whether the state
> court acted reasonably in applying or refusing to apply that
> precedent, we must be mindful that the issue is whether
> Supreme Court law "dictated" a result in our case, or
> whether the circumstances presented here were "closely
> analogous" to those that formed the basis of earlier high
> court decisions.

Fischetti v. Johnson, 384 F.3d 140, 150-51 (3d Cir. 2004)
(internal citations omitted).

The Supreme Court opinions dealing with the appointment of
counsel or stand-by counsel after a defendant voluntarily and
knowingly waives his right to counsel focus on whether the trial
court violated the defendant's right to self-representation by
appointing counsel or stand-by counsel.  See, e.g., McKaskle, 465
U.S. 168; Faretta, 422 U.S. at 834-36.  Petitioner argues the
converse here, that the Superior Court violated his right to
counsel by failing to appoint stand-by counsel.  Because the
circumstances of this case are not analogous to the circumstances
forming the basis of the applicable Supreme Court precedents, the
Court concludes that the Delaware Supreme Court's decision did
not represent an unreasonable application of Supreme Court
precedent.  See Wilkerson, 412 F.3d at 454, 455.

Despite the lack of analogous case law, Petitioner would still be entitled to relief if the Delaware Supreme Court unreasonably extended a governing legal principle to a situation in which it should not have controlled, or unreasonably failed to extend such a principle to a situation in which it should have controlled. Wilkerson, 412 F.3d at 455; Brinson v. Vaughn, 398 F.3d 225, 232 (3d Cir. 2005); Ramdass v. Angelone, 530 U.S. 156, 166 (2000). Although the Supreme Court has not fully explained the parameters of the "unreasonable extension" doctrine, the Third Circuit has advised that "[t]he unreasonable extension doctrine still requires reference to a specific legal principle from the Supreme Court." Wilkerson, 412 F.3d at 455.

To apply the unreasonable extension doctrine in this case, the Court must consider (1) whether the Delaware state courts unreasonably concluded that Petitioner still did not have a right to hybrid representation even though his trial was held in his absence, and (2) whether the Delaware state courts unreasonably failed to conduct a second inquiry into whether Petitioner knowingly and voluntarily waived his right to counsel once he refused to participate in his trial. In analyzing these issues, the Court turns to the colloquy between the Superior Court and Petitioner:

> Petitioner: . . . And now at this stage, this charade here is going to take place, I assume, and I'm supposed to be a part of it with no witnesses? Listen, you can have these guys take me back down there and please tell them don't

bring them back up here.  And what you can do is go ahead
and have your trial, I'm not participating in that.

Court: Mr. Thomas, listen to me a minute.  Now, stop being
mad, stop being angry, and listen to me now . . . I'm
willing, even though you haven't done anything to get any of
these people here, to make arrangements to have several of
these inmates come tomorrow.  But I'm not going to bring 13
people, who all saw the same event . . .

* * *

Petitioner: . . . If I can't have my witnesses, I'm not
participating in the trial . . .

* * *

Court: **Now that you appreciate the difficulty that you have
as an inmate in getting the records you want,
subpoenaing the people you want, and having a process work
in the manner that you would like it to work for you, do you
still want to represent yourself?**

Petitioner: **Certainly.**

Court: Well, I can't solve the problem for you.  I can't
subpoena people for you, I can't give - -

Petitioner: Well, can you do me a favor?

Court: Sure.

Petitioner: If my constitutional rights are going to be
violated, in an effort to avoid that, can you
tell them don't bring me back up here?

Court: I can tell them that.

Petitioner: Okay.  That's what I appreciate you do.  And
just tell them to mail me the verdict.  Because I'm not
going to participate in another supposed trial and have all
my constitutional rights stepped on, and then I'm supposed
to just take it all in.

* * *

Petitioner: I'm not going to be a part of that, your Honor.
And I don't mean to disrespect the Court.  I don't even know

13

you.  I don't mean to disrespect you and this process, but this already happened to me once, and I'm not going to go through it again.

Court: I understand that, Mr. Thomas.  And I'm not considering what you're saying disrespectful at all.  The only thing I was trying to do is help the process in the sense of help you, if there are people that you believe needed to come, I was willing to try to make some arrangements.  I cannot arrange for 13 inmates or 30 inmates, whatever you think the number observed this, to come in tomorrow, that's just not reasonable.  It is reasonable to bring in several people that you believe are of some assistance to you.  You made it clear to me that's not what you want to do.

Petitioner: I'm not going to participate in that . . .

(D.I. 11, App. to Ans. Br. in Thomas v. State, No. 226,2003, at B-010.) (emphasis added).

Based on the colloquy between Petitioner and the Superior Court, the Court concludes that Petitioner's refusal to participate in his trial was his way of expressing his dissatisfaction with the Superior Court's refusal to subpoena all thirteen witnesses.  Put another way, Petitioner's refusal to participate in his trial was his way of controlling the case he either did, or did not, present to the jury and court.  McKaskle v. Wiggins, 465 U.S. 168, 178 (1984) (recognizing the purpose of the right to self-representation is to give a pro se defendant the opportunity to "preserve actual control over the case he chooses to present to the jury").  Having assumed control over his defense, the Court concludes that Petitioner cannot now challenge the effectiveness of his own representation.  Faretta,

14

422 U.S. at 834 n.46 (a defendant who exercises his right to self-representation "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"). Accordingly, the Court concludes that the Delaware state courts did not unreasonably conclude that Petitioner was not entitled to hybrid representation, even though his trial was held in absentia.

In addition, the Court concludes that the Delaware state courts did not unreasonably fail to perform a second inquiry into whether Petitioner's right to counsel remained knowing and voluntarily once he declined to participate in his trial. The Supreme Court takes a pragmatic approach to the waiver issue "asking what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide an accused at that stage - - to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized." Patterson v. Illinois, 487 U.S. 285, 298 (1988) (internal citations omitted). In this case, the scope of Petitioner's right to counsel remained the same during his criminal proceeding, and therefore, the Court is not persuaded that the trial court was required to perform a second Faretta inquiry as thorough and searching as the initial Faretta inquiry. Moreover, the Third Circuit has recognized in the context of

avoiding a waiver of the right to self-representation, that a
defendant is not required to continually renew his request for
self-representation once that request is denied.  Buhl, 233 F.3d
at 803.  Extending this principle by analogy, the Court concludes
that a trial court is not required to constantly determine if a
defendant's waiver of his right to counsel continues to be
voluntary once it has already made an initial determination that
such a waiver is knowing, intelligent, and voluntary.[4]
Accordingly, the Court concludes that the Delaware state courts
did not unreasonably fail to extend the Faretta waiver inquiry
where, as here, Petitioner's trial proceeded in absentia and
without stand-by counsel.[5]

---

[4]    However, even if a second inquiry is required, the
Court concludes that the Superior Court performed such an inquiry
in this case by informing Petitioner that his trial was going to
proceed in his absence without stand-by counsel and asking
Petitioner if still wished to continue pro se in these
circumstances.

[5]    The Court acknowledges the serious consequences
resulting from Petitioner's waiver of counsel when joined with
his refusal to participate in his trial.  However, in analyzing
Petitioner's Sixth Amendment claim under § 2254(d)(1)'s
unreasonable application prong, it is irrelevant whether this
Court believes the Superior Court should have appointed counsel
once Petitioner refused to participate in his trial.  The Court's
inquiry is limited to determining whether the Delaware Supreme
Court unreasonably applied Supreme Court precedent in finding
that the Superior Court was not required to appoint stand-by
counsel.  See Lockyer v. Andrade, 538 U.S. 63 (2003)("Under §
2254(d)(1)'s 'unreasonable application clause' . . . a federal
habeas court may not issue the writ simply because in its
independent judgment that the relevant state-court decision
applied clearly established federal law erroneously or
incorrectly").  Although the Court believes that, under these

In sum, the Court concludes that Petitioner has failed to demonstrate that federal habeas relief is warranted under Section 2254(d), and therefore, the Court will dismiss Petitioner's claim based on the Sixth Amendment right to counsel.

B.  <u>Whether The Delaware Superior Court Violated Petitioner's Right To Be Present During Jury Selection, The Trial Proceedings, And For The Return Of The Jury's Verdict</u>

Petitioner next contends that the Delaware Superior Court violated his due process rights by failing to have him present during jury selection, the trial, and the return of the jury's verdict. In essence, Petitioner is arguing that he did not knowingly and voluntarily waive his right to be present during his trial.

The Delaware Supreme Court adjudicated this claim on the merits. <u>See</u> <u>supra</u> n. 1 at p. 10. Thus, the Court must determine whether the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.[6]

"The Due Process Clause and the Confrontation Clause of the Sixth Amendment, as applied to the States via the Fourteenth

_____

circumstances, the Superior Court could have appointed counsel to represent Petitioner without violating his Sixth Amendment right to self-representation, the Court is constrained to conclude that there is no precedent requiring the appointment of counsel in these circumstances.

[6]  To the extent Petitioner raises this claim as violation of state law, the Court will dismiss it for failing to present an issue cognizable on federal habeas review. <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).

Amendment, both guarantee the criminal defendant . . . the 'right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'" <u>Tennessee v. Lane</u>, 541 U.S. 509, 523 (2004) (quoting <u>Faretta</u>, 422 U.S. at 819 n. 15.)  However, a Petitioner can waive his right to be present at trial, if his waiver is knowing and voluntary.  <u>Crosby v. U.S.</u>, 506 U.S. 255, 2661-63 (1993).  Whether a criminal defendant knowingly and intelligently waived his right to be present at trial "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938).  In making this determination, the Court must consider (1) whether the waiver was made after the commencement of trial, and (2) whether the waiver was knowing and voluntary.

Although courts have concluded that a federal criminal trial commences with jury selection under Federal Criminal Rule of Procedure 43, the Supreme Court has expressly refrained from determining when a trial commences under the federal Constitution.[7]  <u>Crosby</u>, 506 U.S. at 262.  However, federal appellate courts addressing this issue have held that, unlike the

_____

[7]    See <u>United States v. Bradford</u>, 237 F.3d 1306, 1309-10 (11th Cir. 2001) (noting that "every other circuit to address the issue" has "held that a trial commences under Rule 43 when jury selection begins")

right to be present at trial under Criminal Rule 43, the
constitutional right to be present at trial can be knowingly and
intelligently waived even before jury selection.  U.S. v.
Alessandrello, 637 F.2d 131, 137-38 (3d Cir. 1980); see also
Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999); United States v.
Brown, 571 F.2d 980, 986 (6th Cir. 1978).

In this case, Petitioner refused to participate in his trial
before jury selection, and the Superior Court conducted an
extensive colloquy with Petitioner during which Petitioner stated
ten times that he did not want to participate in his trial,
unless he was permitted to have thirteen inmates testify.  The
Superior Court secured Petitioner's understanding that his trial
was underway and that jury selection would begin without his
presence, and Petitioner indicated that he still did not wish to
participate.  The Superior Court also informed Petitioner that he
would bring him back into the courtroom at various points in the
trial to make sure he still did not wish to be present.  (D.I.
11, State's Ans. Br. Ex. B-018.)  At all times Petitioner
indicated that he understood.  Because there is no Supreme Court
precedent regarding the constitutionality of waiving one's right
to be present during trial prior to the selection of a jury, and
the Superior Court ensured that Petitioner understood that his
trial was underway, the Court concludes that the Delaware Supreme
Court's decision that Petitioner's waiver was made after trial

19

commenced was not contrary to or an unreasonable application of established federal law.

The Court also concludes that the Delaware Supreme Court did not err in concluding that Petitioner knowingly and voluntarily waived his right to be present at his trial.  Petitioner declined to participate in his trial numerous times, despite repeated inquiries by the Superior Court, at various times during the proceedings, as to whether he had changed his mind.  (D.I. 11, at B022-B024.)  Petitioner knew he had a right to be present during the proceedings, yet he chose not to be present in an effort to protest the Superior Court's decision not to subpoena all thirteen of the witnesses he requested.  Accordingly, the Court concludes that the Delaware Supreme Court's decision that Petitioner's waiver was knowing and voluntary was not contrary to or an unreasonable application of clearly established federal law, and therefore, the Court will dismiss Petitioner's claim.

C.    Whether the Superior Court Violated Petitioner's Rights Under The Compulsory Clause Of The Sixth Amendment By Refusing To Subpoena Certain Witnesses

Petitioner contends that the Superior Court's refusal to subpoena thirteen inmate witnesses and nine correctional employees violated the Compulsory Clause of the Sixth Amendment. (D.I. 1.)  He also contends that his due process rights were violated when the Superior Court refused to allow him to access the victim's work record.

Petitioner presented these issues to the Delaware Supreme Court in his direct appeal. The Delaware Supreme Court denied the claims, finding that the Delaware Superior Court properly refused Petitioner's unreasonable demands because: (1) the Superior Court was obligated to exercise reasonable control over the trial proceedings pursuant to D.R.E. 611(a); and (2) the Superior Court had the discretion to exclude witnesses who did not have personal knowledge of the facts of the case under D.R.E. 403. Thomas, 2004 WL 300444, at **2.

As an initial matter, the Court will dismiss Petitioner's claim regarding the Superior Court's refusal to let him have access to the victim's work record. Petitioner fails to explain the relevance of the victim's work record or how the records would have impacted the result of his trial. Accordingly, the Court concludes that Petitioner's claim is conclusory and unsupported, and therefore, Petitioner is not entitled to relief. See generally Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987); DeShields v. Snyder, 830 F. Supp. 819, 823 (D. Del. 1993).

As for Petitioner's compulsory process claim, the Court notes at the outset, that the Delaware Supreme Court decided this claim in terms of state evidentiary law. However, such a decision constitutes an adjudication on the merits for the purposes of § 2254(d)(1), and therefore, the Court must determine

whether the Delaware Supreme Court's decision was contrary to, or an unreasonable application of clearly established federal law. See Rompilla, 355 F.3d at 247.

Where, as here, an issue is based on state evidentiary law, the Supreme Court has concluded that the Constitution affords trial judges "'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant,' or poses an undue risk of 'harassment, prejudice [or] confusion of the issues." Crane v. Kentucky, 476 U.S. 683, 689-90 (1986). Thus, an erroneous evidentiary ruling only rises to the level of a constitutional violation if the error deprived the petitioner of a fundamentally fair trial. See Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973).

A criminal defendant has the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Because this right is made applicable to the States through the Fourteenth Amendment, a violation of the right also constitutes a violation of due process. Washington v. Texas, 388 U.S. 14, 17-19 (1967). However, the right to present witnesses and evidence "is not absolute." Gov't of Virgin Islands v. Mills, 956 F.2d 443, 445 (3d Cir. 1992). The right to compulsory process only extends to evidence that is material and favorable to the defense. United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982); Mills, 956 F.2d at 446. Evidence is material

"only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." Valenzuela, 458 U.S. at 874. A reasonable likelihood is "a probability sufficient to undermine confidence in the outcome." Mills, 956 F.2d at 446 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). A criminal defendant establishes that his right to compulsory process has been violated by showing: "(1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purposes." United States v. Cruz-Jiminez, 977 F.2d 95, 100 (3d Cir. 1992).

After reviewing the record on this issue, the Court concludes that the Delaware Supreme Court's decision denying Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law. The Superior Court gave Petitioner several opportunities to narrow his witness list. Petitioner refused, insisting that at least thirty or forty people had witnessed the altercation. The Superior Court then informed Petitioner that, although he had a right to subpoena witnesses, he did not have "an unlimited right, an unfettered right to call in as many people as you want." (D.I. 11, State's App. to Op. Br. in Thomas v. State, No. 226, 2003, at

23

B-011.)  The Superior Court asked Petitioner to summarize the
testimony he expected to elicit from these witnesses, and
Petitioner could not.  The Superior Court also asked Petitioner
how the witnesses' testimonies would differ, but Petitioner
refused to respond.  The Superior Court informed Petitioner that
the court would not hear repetitive testimony, and gave
Petitioner the opportunity to select three inmates and several
correctional employees to testify.  In the Court's view, the
Superior Court proceeded reasonably and afforded Petitioner
sufficient opportunity to present his defense.  In addition, the
Court concludes that Petitioner has failed to demonstrate that
the evidence he sought was material to his defense.  Accordingly,
the Court will dismiss Petitioner's claim based on a violation of
his rights to compulsory process.

     D.    <u>Whether The Superior Court Violated Petitioner's Due
          Process Rights By Failing To Conduct A Preliminary
          Hearing</u>

Petitioner next contends that his rights under Superior
Court Criminal Rule 5 and 5.1 and the Due Process Clause of the
Constitution were violated, because the Delaware Superior Court
allowed the prosecution to seek an indictment, before his
preliminary hearing was concluded.  It is well-settled that
"[f]ederal habeas corpus relief does not lie for errors of state
law." <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Johnson v.
Rosemeyer</u>, 117 F.3d 104, 109 (3d Cir. 1997).  Accordingly, the

Court concludes that Petitioner's claim based on an alleged violation of the Delaware Superior Court Criminal Rules fails to present an issue cognizable on federal habeas review.

To the extent Petitioner contends that the failure to complete his preliminary hearing violated his due process rights under the federal Constitution, the Court also concludes that Petitioner's claim is not cognizable on federal habeas review. The Constitution does not require a state to hold a preliminary hearing. <u>Gerstein v. Pugh</u>, 420 U.S. 103, 123-24 (1975); <u>Coleman v. Alabama</u>, 399 U.S. 1, 8 (1970); <u>U.S. v. Farries</u>, 459 F.2d 1057, 1062 (3d Cir. 1972). Moreover, "[o]nce an indictment has been returned a preliminary hearing is not required." <u>Farries</u>, 459 F.2d at 1062. Even if the indictment is returned in the interim between an initial appearance and the scheduled date for the hearing, there is no constitutional violation. <u>See</u> <u>U.S. v. Universita</u>, 192 F. Supp. 154, 155 (D.C.N.Y. 1961) ("The action of the grand jury during the interim of postponement, however, eliminated the need for a preliminary examination"). Accordingly, the Court the Court will dismiss Petitioner's due process claim.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. <u>See</u> Third Circuit Local Appellate

Rule 22.2.  A certificate of appealability is appropriate when a
petitioner makes a "substantial showing of the denial of a
constitutional right" by demonstrating "that reasonable jurists
would find the district court's assessment of the constitutional
claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  <u>Slack v.</u>
<u>McDaniel</u>, 529 U.S. 473, 484 (2000).

     For the reasons stated above, the Court concludes that
Petitioner's claims regarding his right to a preliminary hearing
and the Superior Court's refusal to subpoena witnesses do not
warrant federal habeas relief.  The Court is persuaded that
reasonable jurists would not find these conclusions debatable.
Taking the Superior Court's decision to proceed with his trial <u>in</u>
<u>absentia</u> and its decision not to appoint stand-by counsel as
separate, individual issues, the Court is also not persuaded that
reasonable jurists would debate the correctness of the Court's
conclusions that Petitioner's rights were not violated.  However,
when the Superior Court's decisions are viewed together, the
Court concludes that reasonable jurists may disagree as to
whether the Superior Court violated Petitioner's right to a fair
trial.  As a result of its decisions, the Superior Court
conducted a one-sided trial.  The United States Supreme Court has
recognized that, "[t]he paramount importance of vigorous
representation follows from the nature of our adversarial system
of justice.  This system is premised on the well-tested principle

26

that truth – as well as fairness – is 'best discovered by powerful statements on both sides of the question.'" Penson v. Ohio, 488 U.S. 75, 84 (1988).  Although Petitioner's waiver of his right to counsel and his waiver of the right to be present at trial were both knowing and voluntary in the constitutional sense, the fact that nobody was representing Petitioner at his trial can reasonably be viewed as a complete breakdown in the adversarial process.  U.S. v. Cronic, 466 U.S. 648, 656-57, 659 n.25 (1984) (stating that this Court "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding").  Accordingly, the Court concludes that Petitioner has made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), and therefore, the Court will issue a certificate of appealability to determine whether Petitioner's constitutional right to a fair trial was violated when the Superior Court proceeded with his trial in absentia without appointing counsel to represent him.

**V.   CONCLUSION**

For the reasons discussed, the Court will dismiss the Petition and deny the relief requested therein.  A certificate of appealability is granted to determine whether Petitioner's right to a fair trial was violated when the Superior Court proceeded

27

with his trial _in_ _absentia_ without appointing counsel to
represent him.

    An appropriate Order will be entered.